CASE 19—FERRY CASE—MARCH 15.

## Potts, Etc. v. Park.

APPEAL FROM ESTILL CIRCUIT COURT.

FERRIES—RIGHT A MERE PRIVILEGE.—A ferry right granted under the statutes is a mere privilege which the owner has no right to encumber. so as to interfere with the performance of his duties to the public; hence, a contract to ferry one and his family is not binding on the successor to the ferry-owner after the expiration of the period for which the franchise was granted.

J. B. WHITE FOR THE APPELLANTS.

1. Where a purchaser of a ferry by executory contract has not paid for the property, a contract by him with an individual for ferrying him and his family is a mere personal contract and does not attach to the ferry proper, nor will it be affected if reduced to writing and recorded. Such instrument is not recordable. Ky. Stats., ch. 29, sec. 500.

2. Parrish bought the property without notice alleging perpetual right.

3. Although the original contract may have been valid, equity should not aid appellee in enforcing it as it is an unsconsconable contract. White v. Cates, 7 Dana, 358; Greer v. Boone, 5 B. M., 560; Shortridge v. Bartlett, 14 B. M., 200; Ky. Stats., sec. 500.

Potts, &c., v. Park.

W. S. PRYOR AND COURTLAND P. CHENAULT ALSO FOR APPEL-
LANTS.

Appellants had no actual notice of the contract between their
remote vendors and the appellee, and in the absence of such no-
tice they are not in any way bound by the contract. The contract
was not a recordable instrument and therefore the fact that
it was off record was not constructive notice.

RIDDELL & RIDDELL FOR THE APPELLEE.

1. The contract is admitted, or at least not denied. It was an in-
terest in land, a hereditament and therefore recordable. Dufour
v. Stacy, 90 Ky., 14, and authorities there cited; Hazelip v.
Lindsey, 93 Ky., 14; Revised Stats., p. 293, sec. 13; Ray v.
Sweeney, 14 Bush, 1; 7 Am. & Eng. Ency. of Law, 942, and
authorities cited.

SAME COUNSEL FOR THE APPELLEE IN A PETITION FOR A REHEARING.

1. The pleadings and proof show a recognition of the contract made
by Thomas W. Adams with the appellee and an acquiescence
therein and the performance thereof from the 23d of Septem-
ber, 1873, to December, 1894.
2. The parties to the contract and their successors have been in
the enjoyment of the consideration of the contract from the
time of the execution of the contract to the present time and
they are therefore bound by its trems.

JUDGE BURNAM DELIVERED THE OPINION OF THE COURT.

Appellee sought in this action to enjoin and restrain
appellants, as the owners of what is known as the "Upper
Ferry," across the Kentucky river at Irvine, from collect-
ing ferriage from himself or any member of his family,
and from interfering with a fence across the ferry prop-
erty on the south side of the river.

The basis of appellee's claim is the following recorded
written agreement with Thomas W. Adams, who was at
that time operating the ferry in question:

"Article of agreement, made and entered into this 23d
day of September, 1873, by and between W. W. Park
and Thomas W. Adams, both of Estill county, Kentucky,

witnesseth: That said Adams agrees and binds himself and his heirs and assigns to ferry said Park or his successors, family, and all necessary ferrying for the family, including wagons, buggies and work hands, when on said Park's or his successors' business. In consideration for the above-named ferriage, said Park grants said Adams and his successors the privilege of tying his ferry rope to the sycamore tree above the ferry, or, should said tree be destroyed, then said Adams is to have the privilege of putting up a post sufficient to tie to anywhere that may be necessary for said ferry, or to tie to any other tree. Said Adams is to have the privilege of a landing forty feet wide on the south side of the river. Said Park is to have the privilege of running a fence to the river across the land of said Adams just above the ferry. In witness whereof we have hereunto signed our names.

"W. W. PARK,

"THOMAS W. ADAMS."

Appellee alleges that between the date of this contract and the acquisition by appellants of the right to operate the ferry in question, it has changed hands several times, and that each succeeding owner had acquired with full knowledge of this contract and appellee's claim to free toll; that each succeeding owner had performed the contract according to its terms, but that appellants, in December, 1894, had refused to do so; and he asked the chancellor to enforce his contract and restrain appellants from collecting or attempting to collect tolls from himself or his family.

Defendants, by way of answer, denied that they had ever agreed to assume or perform the conditions of this contract, or that it was in any wise binding or enforceable against them. They alleged that they were not using

any part of the forty feet of land leased to Adams, or
the sycamore tree, in the operation of the ferry; and
the evidence of Parrish and McSwain, appellants' imme-
diate vendors, is to the effect that there was no express
undertaking or agreement on their part or that of appel-
lants to perform the contract between appellee and
Adams; but that, on the contrary, when the attention of
S. D. Parrish, the vendor of appellants, was called to the
contract in question, long after his purchase from Mc-
Swain, he repudiated it, and refused to be bound thereby.

The question before us is:  Did the agreement entered
into between appellee and Adams, in 1873, impose a per-
petual burden in favor of appellee upon the ferry fran-
chise, or was it a mere personal contract, binding alone
upon the original parties so long as Adams operated the
ferry?

Section 1802 of the Kentucky Statutes provides "that
no ferry privilege shall hereafter be granted for a longer
period than twenty years," and this was also a provision
of the General Statutes.  The right of ownership in a
ferry is only a qualified one.  It is a mere privilege.
Power is given to the several county courts of this Com-
monwealth to "grant, regulate and revoke" the privilege,
and the public has distinct rights with reference thereto;
and the owner of such a privilege has no power to incum-
ber the franchise by burdens, the tendency of which would
be to destroy its usefulness.  If the temporary owner
of such a privilege could make contracts by which, in con-
sideration of certain benefits to himself, the franchise
was to be perpetually incumbered by burdens in the na-
ture of free tolls to individuals, it is evident that it would
be in his power to render the franchise worthless, and
to make it impossible to perform the duties to the public

imposed upon him by the grant of the privilege to operate the ferry.

The proof shows that the use of the land owned by appellee on the south side of the river, or of the tree mentioned in the contract, is not essential to the proper operation of the ferry, or to the discharge of the duties imposed by law upon the owners thereof. They were at best but a mere temporary convenience and economy to Adams, and the contract was binding only upon him or his successors so long as they voluntarily continued to use the property of appellee, and the same can not be enforced against remote successors, long after the time when, by limitation, the franchise had expired.

For the reasons indicated, the judgment is reversed, and the cause remanded, with directions to dissolve the injunction and dismiss plaintiff's petition.